**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

IN RE: BOSTON SCIENTIFIC CORP.,
       PELVIC REPAIR SYSTEM
       PRODUCTS LIABILITY LITIGATION

MDL No. 2326

---------------------------------------------------------------

THIS DOCUMENT RELATES TO THE FOLLOWING CASE:

*Brenda L. Robinson & Rex Robinson v. Boston Scientific Corp.*    No. 2:12-cv-03700

**MEMORANDUM OPINION AND ORDER
(Defendants' Motion for Summary Judgment)**

Pending before the court is the defendant's Motion for Summary Judgment Based on Statute of Limitations ("Motion") [Docket 54]. For the reasons set forth below, the Motion is **GRANTED**, and this case is **DISMISSED with prejudice**.

**I.    Background**

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 70,000 cases currently pending, approximately 15,000 of which are in the Boston Scientific Corp. ("BSC") MDL, MDL 2326. In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions, summary judgment motions, and motions *in limine*, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, I ordered the plaintiffs

and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. (*See* Pretrial Order # 65, *In re: Boston Scientific Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-002326, entered Dec. 19, 2013, *available at* http://www.wvsd.uscourts.gov/MDL/boston/orders.html). This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. The Robinsons' case was selected as a Wave 2 case by the plaintiffs.

On June 27, 2006, Ms. Robinson was surgically implanted with the Obtryx Transobturator Mid-Urethral Sling System (the "Obtryx"), a product manufactured by BSC to treat SUI. (*See* BSC's Mot. for Summ. J. & Mem. of Law in Supp. ("Mem. in Supp.") [Docket 54], at 3). She received her surgery at a hospital in Salt Lake City, Utah. (*Id.*). Ms. Robinson claims that as a result of implantation of the Obtryx, she has experienced multiple complications, including pain, pain with intercourse, SUI, mesh erosion/exposure, urinary problems, and emotional effects. (*Id.* at 4). She brings the following claims against BSC: negligence; strict liability for design defect, manufacturing defect, and failure to warn; breaches of express and implied warranties; and punitive damages. (Pl.'s First Am. Short Form Compl. ("Short Form Compl.") [Docket 11], at 4–5). In the instant motion, BSC argues that each of Ms. Robinson's claims are barred by Utah's statute of limitations, and consequently, the court should grant summary judgment in favor of BSC and dismiss Ms. Robinson's case. BSC further contends that if Ms. Robinson's claims are barred as untimely, Mr. Robinson's claim for loss of consortium is also time barred and should be dismissed.

## II. Legal Standards

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

### B. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL

cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). To determine the applicable state law for a dispositive motion based on the statute of limitations, I generally refer to the choice-of-law rules of the jurisdiction where the plaintiff first filed her claim. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010). The Robinsons initially filed their products liability action in the District of Utah on July 3, 2012. (*See* Compl. [Docket 2]). Subsequently, they filed a First Amended Short Form Complaint into MDL No. 2326 on September 10, 2012. (*See* Short Form Compl. [Docket 11]). As such, the choice-of-law principles of Utah guide this court's choice-of-law analysis.

The parties agree, as does this court, that these principles compel application of Utah law to the plaintiffs' claims. In tort actions, Utah employs the "most significant relationship" test as articulated by the Restatement (Second) of Conflict of Laws ("Restatement") to determine which state's laws should apply to a given circumstance. *See Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1059 (Utah 2002). Section 145 of the Restatement lists the following factors to consider when determining which state has the most significant relationship to a dispute: "(a) the

4

place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement § 145(2). The Restatement directs that "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.* Here, the implantation surgery that allegedly resulted in Ms. Robinson's injuries took place in Utah. (Pl. Fact Sheet [Docket 54-1], at 4). The Robinsons are Utah residents. (Short Form Compl. [Docket 11], at 1). And Ms. Robinson's subsequent medical treatment for the claimed injuries occurred in Utah. (Pl. Fact Sheet [Docket 54-1], at 6). Accordingly, Utah has the most significant relationship to the occurrence alleged in this lawsuit and to the parties. Thus, I apply Utah's substantive law—including Utah's statutes of limitations—to this case.

### III. Discussion

I begin by reviewing the relevant disputed facts.[1] On June 26, 2006, Ms. Robinson had a preoperative meeting with Dr. Clayton Wilde to discuss the placement of a transobturator suburethral sling. (Robinson Medical Rs. June 26, 2006 [Docket 54-4], at 8). Dr. Wilde reviewed the risks, complications, indications, and nature of the procedure with Ms. Robinson at that time. (*Id.*). Dr. Wilde's notes indicate that he discussed voiding disorders and tape erosion with her. (*Id.*). Ms. Robinson then signed a Consent for Operation or Procedure form authorizing Dr. Wilde to place a "sling" under her urethra in order to relieve her urinary incontinence. (Robinson Medical Rs. June 26, 2006 [Docket 54-3], at 2). The form describes the device as a "Transobturator Suburethral Sling." (*Id.*). Ms. Robinson underwent implantation of the Obtryx on June 27, 2006. (Pl. Fact Sheet [Docket 54-1], at 4). At least two of Ms. Robinson's medical

---

[1] The plaintiffs state that BSC's recitation of the facts is incomplete. Therefore, I provide the relevant facts as noted in BSC's Motion and include the additional facts described in the plaintiffs' responsive briefing.

records include the name of the implanted product, including (1) Dr. Wilde's Operative Report, (*see* Robinson Medical Rs. June 27, 2006 [Docket 54-4], at 3 (describing the procedure performed as "Obtryx transobturator suburethral sling")), and (2) Dr. Wilde's Implant Record, (*see id.* at 9 (including a product sticker which identifies the product name–"Obtryx"–and product number)). Following the implantation procedure, Ms. Robinson signed a Discharge Information Sheet form that described the procedure as "Transobturator Sub Urethral Sling." (*Id.* at 10).

In "late 2006 or early 2007," Ms. Robinson began to experience "problems." (Pl. Fact Sheet [Docket 54-1], at 5). She presented to Dr. Wilde with complaints about possible sling erosion and her husband's dyspareunia on January 24, 2007. (Robinson Medical Rs. [Docket 54-4], at 7). Upon examination, Dr. Wilde did note some erosion of the tape. (*Id.*; *see also* Clayton Wilde Dep. [Docket 54-6], at 66:2–5). Ms. Robinson had an interval exam with Dr. Wilde on April 25, 2007. (*Id.* at 2). At that point, she was still having dyspareunia, and Dr. Wilde again noted "a little bit of vaginal erosion of her suburethral tape." (*Id.*). Ms. Robinson remembers Dr. Wilde telling her that the mesh was "hanging down a little" and that he thought it was causing the pain that Mr. Robinson felt during intercourse. (Brenda Robinson Dep. [Docket 54-2], at 77:21–78:19). He explained that trimming the mesh would improve Ms. Robinson's symptoms. (Pl. Fact Sheet [Docket 54-1], at 5). On May 4, 2007, Dr. Wilde performed an excision/removal procedure on Ms. Robinson. (*Id.*).

Between 2007 and 2012, Ms. Robinson continued to experience symptoms, including infections, pain with intercourse, incontinence, and bleeding. (*See* Brenda Robinson Dep. [Docket 54-2], at 193:10–194:10). In February 2012, Ms. Robinson saw a television commercial concerning mesh. (*See* Pl. Resp. in Opp'n to BSC's Mots. for Summ. J. ("Resp.") [Docket 88], at

6

18). She then visited Dr. Lisa Stout with complaints of pain, heavy leaking, urinary tract infections, and Mr. Robinson's continued ability to feel the mesh. (Brenda Robinson Dep. [Docket 88-2], at 87:8–16). On June 8, 2012, Dr. Stout performed an "excision of vaginal mesh." (Robinson Med. Rs. June 8, 2012 [Docket 88-11], at 14). The Robinsons filed their original suit on July 3, 2012. (*See* Compl. [Docket 2]).

Utah's Product Liability Act ("UPLA") provides a two-year statute of limitations for the plaintiffs' claims. Utah Code Ann. § 78B-6-706 (West 2014).[2] Section 78B-6-706 explicitly incorporates the discovery rule by providing that the action "shall be brought within two years from the time the individual who would be the claimant in the action discovered, or in the exercise of due diligence should have discovered, both the harm and its cause." *Id.* The Supreme Court of Utah has yet to elaborate on the precise contours of Utah's discovery rule, in particular, whether "cause" as mentioned in section 78B-6-706 means only "identity of the manufacturer," "cause in fact," or "possible legal responsibility." However, lower Utah courts have interpreted the phrase– "and its cause"–to mean both the identity of the allegedly defective product's manufacturer and the causal relationship between the product and the harm. *See Aragon v. Clover Club Foods Co.*, 857 P.2d 250, 252–54 (Utah Ct. App. 1993). *Aragon* holds that discovery of "cause" requires discovery of "the identity of the manufacturer" and that "due diligence" is "that diligence which is appropriate to accomplish the end sought and which is reasonably calculated to do so." *Id.* at 252–53. Following *Aragon*, courts considering Utah law have applied a three-part analysis to statute-of-limitations issues under the UPLA:

> [T]he UPLA statute of limitations begins to run when the plaintiff discovers, or should have discovered: (1) that she has been injured; (2) the identity of the maker

---

[2] Both Ms. Timothy's non-warranty and warranty claims fall under this general statute. *See Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*, 794 P.2d 11, 16 (Utah 1990) (holding that the UCC four-year statute of limitations for contracts (Utah Code Ann. § 70A-2-725) does not apply to warranty claims based on personal injury).

      of the allegedly defective product; and (3) that the product had a possible causal relation to her injury.

*Hansen v. Novartis Pharms. Corp.*, No. 2:08-cv-985, 2011 WL 6100848, at *3 (D. Utah Dec. 7, 2011) (citing *Aragon*); *see also Pratt v. Cavagna N. Am., Inc.*, No. 2:13-cv-107, 2013 WL 6146075, at *3 (D. Utah Nov. 21, 2013) (same); *McDougal v. Weed*, 945 P.2d 175, 177 n.1 (Utah Ct. App. 1997) (reasserting *Aragon*'s holding that the statute of limitations is tolled until the plaintiff discovers "both the injury and the identity of the manufacturer" and distinguishing the UPLA from the statute of limitations for medical malpractice). With no direction from the Supreme Court of Utah to the contrary, I now apply this analysis to the present facts. *See Castillo v. Holder*, 776 F.3d 262, 268 n.3 (4th Cir. 2015) ("[W]hen the state's highest court has not engaged in such statutory interpretation, a state's intermediate appellate court decisions constitute the next best indicia of what state law is . . . ." (internal quotations omitted)).

      The plaintiffs point to *Bridgewaters v. Toro Co.* for the premise that the discovery provision of the UPLA statute of limitations would be triggered upon discovery that a "defective product" caused the injury. 819 F. Supp. 1002, 1009 (D. Utah 1993) (holding that the "cause" that must be discovered for purposes of section 78B-6-706 is "the legal cause, and not merely the 'but for' cause"). The court is aware of only one other case adopting this strict interpretation of the UPLA's discovery rule. *See Strickland v. Gen. Motors Corp.*, 852 F. Supp. 956, 959 (D. Utah 1994). I find these applications of section 78-B-6-706 unpersuasive for several reasons. First, *Bridgewaters* was a federal district court case decided several months prior to the *Aragon* decision. Thus, I must defer to *Aragon* over *Bridgewaters*. *See United States v. King*, 673 F.3d 274, 279 (4th Cir. 2012) (stating that the federal courts should "generally defer to the state's intermediate appellate courts" on an issue undecided by the highest court of the state). Second, although later in time, the *Strickland* decision arises from an overly broad understanding of

8

*Aragon* and the *Aragon* court's reliance on the Washington Supreme Court case of *North Coast Air Services v. Grumman Corp.*, 759 P.2d 405 (Wash. 1988)—while acknowledging *North Coast*'s reading of Washington's statute of limitations as requiring discovery of the "legal cause," *Aragon*'s holding was much narrower, finding that the UPLA "tolls the statute of limitations until the plaintiff discovers, or in the exercise of due diligence should have discovered, *the identity of the manufacturer*." 857 P.2d at 252–53 (emphasis added). Finally, as explained above, the majority of Utah cases addressing this matter rely on *Aragon*'s three-part analysis (or something less stringent, *see, e.g.*, *Cannon v. Minn. Min. & Mfg. Co.*, 2009 WL 350561, at *6 (D. Utah Feb. 11, 2009) (considering whether the plaintiff knew that the product "was the *possible* cause" of his symptoms) (emphasis added)), and do not require discovery of a specific product defect. For these reasons, I follow *Aragon* rather than *Bridgewaters*.

In BSC's view, the statute of limitations began to run as early as "late 2006 or early 2007," when Ms. Robinson first experienced symptoms of bodily injury, but, no later than mid-2007, when despite Ms. Robinson's excision/removal procedure, the problems continued. Consequently, BSC argues that Ms. Robinson's lawsuit, filed on July 3, 2012, is barred by the UPLA statute of limitations. The plaintiffs, on the other hand, contend that the statute of limitations did not start until 2012, when Ms. Robinson saw television commercials and discovered the cause of her injuries. (Resp. [Docket 88], at 17–19). The undisputed facts, considered under the *Aragon* test, lead this court to agree with BSC.

First, Ms. Robinson testified that she discovered her injuries in late 2006 or early 2007, about six months after her surgery. (*See* Pl. Fact Sheet [Docket 54-1], at 5). Second, both Ms. Robinson's Operative Report and Implant Record name the Obtryx. (*See* Robinson Medical Rs. June 27, 2006 [Docket 54-4], at 3, 9). Assuming that this information was not directly conveyed

9

to Ms. Robinson by her physician, the court must then ask whether Ms. Robinson "presented evidence that would allow a reasonable jury to find that even if she had used 'diligence which is appropriate to accomplish the end sought and which is reasonably calculated to do so,' she should not have ascertained the identity of the manufacturer." *Griffiths-Rast v. Sulzer Spine Tech*, 216 F. App'x 790, 796–97 (10th Cir. 2007) (quoting *Aragon*, 357 P.2d at 253). Ms. Robinson has provided no evidence indicating that she could not have obtained her medical records containing the identity of the product manufacturer had she sought them. Therefore, a reasonable jury could not find that this information was unavailable to Ms. Robinson through due diligence beginning on the day of her implantation surgery, June 27, 2006. *See id.* at 796 ("It seems clear that in a normal case a reasonable jury could not find that it would take over two years to determine the manufacturer of a trademarked medical device when the party knows the correct name of that device."); *see also Pratt*, 2013 WL 6146075, at *3 ("It is well established that plaintiffs cannot simply wait for information regarding a potential defendant to come to them. Rather, a plaintiff has a duty to act with reasonable diligence to ascertain the identity of a defendant." (internal citations and quotation marks omitted)).

Finally, Ms. Robinson discovered that the product had a possible causal relation to her injury by April 25, 2007, when she saw Dr. Wilde about the dyspareunia. During this visit, Dr. Wilde told her that the mesh was "hanging down a little" and that he thought it was causing the pain that Mr. Robinson felt during intercourse. (Brenda Robinson Dep. [Docket 54-2], at 77:21–78:19). He told Ms. Robinson that trimming the mesh would improve her symptoms. (Pl. Fact Sheet [Docket 54-1], at 5). At this point, Ms. Robinson knew that the mesh had a "possible causal relation" to her symptoms of pain and dyspareunia, at the very least, *see Hansen*, 2011 WL 6100848, at *3, and the final prong of *Aragon* was satisfied, thereby triggering the UPLA's

statute of limitations. Accordingly, the statute of limitations, having expired on April 25, 2009, bars her claim which was not filed until July 3, 2012.

The plaintiffs' arguments do not change this definitive outcome. First, in an attempt to create an issue of material fact, the plaintiffs claim that Ms. Robinson did not suspect that the BSC Obtryx was the cause of her injury until she saw a television commercial in early 2012. (Resp. [Docket 88], at 18). However, when the plaintiff conclusively attributed her injury to the product is not the relevant question. *See Hansen*, 2011 WL 6100848, at *3 ("[A] plaintiff need not have a 'confirmed diagnosis' about the causal relation to trigger the running of the statute of limitation."). Rather, the court must ask when the plaintiff had "inquiry notice" of a possible causal relation between the product and her injury. *Id.*; *see also Macris v. Sculptured Software, Inc.*, 24 P.3d 984, 990 (Utah 2001) (considering the statute of limitations for conversion and concluding that "all that is required to trigger [it] is sufficient information to put plaintiffs on notice to make further inquiry if they harbor doubts or questions"). And the undisputed facts demonstrate that Ms. Robinson had inquiry notice on April 25, 2007, when Dr. Wilde told her that the mesh was causing her problems and needed to be surgically repaired. (*See* Brenda Robinson Dep. [Docket 54-2], at 77:21–78:19; *see also, e.g.*, *McCollin v. Synthes Inc.*, 50 F. Supp. 2d 1119, 1123 (D. Utah 1999) (finding that the statute of limitations began to run when the plaintiff learned that a second surgery was needed to "replace implants")).

"It is well settled that the issue of when a plaintiff knew or with reasonable diligence should have known of a cause of action is a question for the [factfinder]." *In re Adoption of Baby B.*, 308 P.3d 382, 418 (Utah 2012) (citing *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir. 1985) (internal quotation marks omitted)). Where the evidence is "so clear that there is no genuine factual issue," however, the determination can be made as a matter of law. *Maughan*,

758 F.2d at 1388. The evidence in this case is clear: Ms. Robinson discovered her injuries, the identity of the product manufacturer, and a possible causal connection between the product and her injury on April 25, 2007. No reasonable jury could find otherwise. Therefore, I **FIND** that the statute of limitations for her products liability claims ran until April 25, 2009, almost three years before she filed suit, and as a result, her claims are barred by the UPLA's statute of limitations.

Mr. Robinson's claim for loss of consortium is dependent on the success of Ms. Robinson's claims. A loss-of-consortium claim is "derivative from the cause of action existing in behalf of the injured person[,] and may not exist in cases where the injured person would not have a cause of action." Utah Code Ann. § 30-2-11(5)(a), (b). Furthermore, "[t]he statute of limitations applicable to the injured person shall also apply to the spouse's claim of loss of consortium." *Id.* § 30-2-11(3). Therefore, I **FIND** that Mr. Robinson's claim is time barred as well.

### IV. Conclusion

For the reasons stated above, BSC's Motion [Docket 54] is **GRANTED**, and this case is **DISMISSED with prejudice**. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 30, 2015

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE